# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

FERRARI FINANCIAL SERVICES, INC.,

     Plaintiff,

 vs.

TAURAYI MURAPA,

     Defendant.

Case No.: 2:25-cv-00807-GMN-EJY

**ORDER STAYING CASE**

Pending before the Court is the Motion to Dismiss, (ECF No. 9), filed by Defendant Taurayi Murapa.  Plaintiff Ferrari Financial Services filed a Response, (ECF No. 10), to which Defendant filed a Reply, (ECF No. 11).  Also pending before the Court are Plaintiff's Motion for Writ of Attachment of Writ of Possession, (ECF No. 12), and Motion for Temporary Restraining Order, (ECF No. 13), to which Defendant filed a Response, (ECF No. 17), and Plaintiff filed a Reply, (ECF No. 18).

For the reasons discussed below, the Court construes Defendant's Motion to Dismiss as a Motion to Compel Arbitration, GRANTS that Motion, and STAYS this case pending arbitration.

## I. BACKGROUND

This case arises out of Defendant's alleged default on his lease agreement for a 2010 Ferrari California. (*See generally* Compl., ECF No. 1).  In 2018, Defendant entered into a lease agreement for the subject vehicle with Ferrari Maserati of Las Vegas, who subsequently assigned the Contract to Plaintiff. (Compl. ¶¶ 6-7).  Under the agreement, Defendant agreed to make 60 monthly installment payments to Plaintiff. (*Id.* ¶ 8).  The agreement did not give Defendant any equity or ownership rights in the subject vehicle unless and until he purchased

it. (*Id.* ¶ 11).  In November of 2023, the parties extended the contract on a month-to-month basis for a period of no more than six months. (*Id.* ¶ 13).  Defendant has not made any payments on the vehicle since May 7, 2024, and has neither purchased the vehicle nor returned it. (*Id.* ¶¶ 21–22, 29).  Plaintiff sent a demand letter to Defendant indicating that he was in default and demanding that Defendant tender the full payoff in the amount of $38,934.52. (*Id.* ¶ 22).

Plaintiff previously brought a case in this Court that arose out of the same set of facts. *See* Case No. 2:24-cv-01640-GMN-EJY.  The Court dismissed that case for lack of subject matter jurisdiction, finding that the amount in controversy did not exceed $75,000 because the amount in controversy for the breach of contract claim was the amount owed under the contract, which was less than $75,000. (*See generally* Order Granting Motion to Dismiss, Ex. 1 to MTD, ECF No. 9-1).  Plaintiff subsequently filed the instant case, bringing the following claims: (1) Action for Claim and Delivery, (2) Breach of Contract, (3) Conversion, and (4) Receipt of Stolen Property. (*See generally* Compl.).  Defendant now moves to dismiss this case, while Plaintiff moves for a Temporary Restraining Order and seeks a Writ of Possession or Writ of Attachment.

## II.    **LEGAL STANDARD**

### **A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction.  "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may take one of two forms. *Thornhill Pub. Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  It may be a "facial" challenge, or it may be a "factual" challenge. *Id.*  "In a facial attack, the challenger asserts that the allegations contained in a

complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008). District courts have jurisdiction over civil actions that arise under federal law, 28 U.S.C. § 1331, and over civil actions where no plaintiff is a citizen of the same state as a defendant and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332(a).

### B. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs the enforcement of written arbitration agreements, including agreements arising from most employment contracts. *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111, 119 (2001). Section 2 of the FAA provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Courts place arbitration agreements "upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*

*Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (alteration in original).  Thus, the Court's "role under the [FAA] is. . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013).  In answering these questions, the Court must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).  The party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by [a] preponderance of the evidence." *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (internal quotation marks and citation omitted).  If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

## III.    **DISCUSSION**

Defendant moves to dismiss Plaintiff's Complaint for four reasons.  First, Defendant argues that the issues presented in the Complaint are precluded following this Court's dismissal of Plaintiff's prior case for lack of subject matter jurisdiction. (Mot. Dismiss ("MTD") 4:4-7:11, ECF No. 9).  Next, Defendant asserts that Plaintiff intentionally submitted a partial contract in its Complaint but does not explain why such alleged omission warrants dismissal in and of itself. (*Id.* 7:12-9:10).  Defendant also contends that, as in the prior case, the amount in controversy does not exceed $75,000 because neither the damages nor the vehicle is worth over

$75,000. (*Id.* 9:12-11:24).  Finally, Defendant seeks dismissal on the basis of the arbitration provision in the parties' contract.[1] (*Id.* 12:1-13:15).

As a threshold issue that determines whether the Court can consider the other issues presented in Defendant's Motion to Dismiss, the Court first analyzes whether it has subject matter jurisdiction over this case.

## A.  Subject Matter Jurisdiction

Plaintiff invokes the Court's subject matter jurisdiction under 28 U.S.C. § 1332, which provides that the district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between [] citizens of different states." 28 U.S.C § 1332.

Where the plaintiff originally files in federal court, "the amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000).  The amount in controversy alleged by the proponent of federal jurisdiction—typically the plaintiff in the substantive dispute—controls so long as the claim is made in good faith. *Id.*  "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (internal quotation omitted).  This is called the "legal certainty" standard, which means a federal court has subject matter jurisdiction unless "upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938).[2]

---

[1] Defendant's Motion to Dismiss improperly includes a motion to compel arbitration, a request that should have been filed as a separate document under Local Rule IC 2-2(b).  The Court construes this portion of Defendant's Motion to Dismiss as a Motion to Compel Arbitration and considers it below.

[2] This standard differs substantially from the standard applied when a case has been removed from state court to federal court, where the proponent of federal jurisdiction has the burden to prove, by a preponderance of the evidence, that removal is proper. *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010).

Because Plaintiff asserted several new claims in this case, the Court's subject matter jurisdiction inquiry differs from that in the prior case between these parties.

First, Plaintiff's claim for action and delivery under NRS 31.850 is a claim for replevin. In a replevin action seeking declaratory and injunctive relief, the amount in controversy is measured by the value of the property in dispute. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1997) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."). Because Plaintiff effectively seeks a declaratory judgment compelling Defendant to transfer title of the subject vehicle, the value of that vehicle appears to best reflect the amount in controversy. *See id.*

Plaintiff's Complaint states that the value of the subject vehicle at the time of the filing of this case was in the range of $77,988 to $99,996. (Compl. ¶ 28). Defendant attempts to challenge that value, asserting that a significant number of 2010 Ferrari Californias at or around the mileage of the subject vehicle are being advertised for sale for lower than $75,000. (MTD 11:10-13 (citing Ex. 4 to MTD, ECF No. 9-4)). But "[u]nder the legal certainty standard, the good faith allegations in [the Complaint] as to the amount in controversy suffice to establish the jurisdictional amount unless it appears legally certain that the amount in dispute is $75,000 or less." *Geographic Expeditions*, 599 F.3d at 1107. The Ninth Circuit has explained:

> the legal certainty test makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement. Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction.

*Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015), *abrogated on other grounds by Lindke v. Freed*, 601 U.S. 187 (2024) (quoting *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363–64 (9th Cir. 1986)). Defendant's argument regarding the possible value of the

subject vehicle does not persuade the Court that it is a legal certainty that this case is worth less than $75,000, because it does not identify "a specific rule of law . . . [that] limits the amount of damages recoverable," nor does it identify "facts [that] show [] the amount of damages was claimed merely to obtain federal court jurisdiction." *See id.*  Having applied the legal certainty test, as it must, the Court determines that it has subject matter jurisdiction and therefore DENIES Defendant's Motion to Dismiss on that basis.

### B.  Arbitration

Having determined that it has subject matter jurisdiction in this case, the Court next considers whether its jurisdiction is limited by the FAA due to an arbitration clause in the parties' agreement.  Defendant argues that the arbitration clause requires the parties to arbitrate any dispute, rather than filing a lawsuit, and thus the Court must dismiss the case under the FAA.  But the arbitration clause provides the following exception:

> Notwithstanding this clause, both you and we and our successors and assignees retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbiter. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

(Contract ¶ 37, Ex. A to Compl., ECF No 1-1).  While Defendant acknowledges that this section allows the parties to seek self-help remedies, he argues that they can only do so "pending final determination of the dispute by the arbiter." (MTD 13:9-13).  In Response, Plaintiff asserts that the clause cannot be interpreted to require arbitration to have been initiated prior to seeking self-help remedies, because such an understanding would render the second sentence of the clause meaningless. (Resp. 15:26-16:9).  This is so because, according to Plaintiff, if self-help and provisional remedies were only available after the initiation of arbitration proceedings, there would be no potential waiver of arbitration, yet the above clause provides that the parties do not waive arbitration in seeking those remedies. (*Id.*).

Though Plaintiff emphasizes that the Court "should not interpret a contract so as to render its provisions meaningless," it fails to recognize that its proposed interpretation would render a different part of the clause meaningless. (Resp. 16:4-9 (citing *Sparks v. HRHH Hotel, LLC*, No. 2:11-cv-00973-GMN-VCF, 2012 WL 1970020, at *4 (D. Nev. May 31, 2012)). While the clause explicitly provides that the parties have a right to seek provisional remedies "pending final determination of the dispute by the arbiter," Plaintiff's interpretation asks the Court to ignore that portion of the arbitration clause. (Contract ¶ 37, Ex. A to Compl.).  But there is a way to read the above clause that gives meaning to both sentences: the parties have a right to seek provisional remedies after initiating arbitration but before the arbiter is able to act, and doing so does not waive the parties right to continue to arbitrate after obtaining provisional remedies.[3]  Such a reading does not render any of the provisions of the arbitration clause meaningless, and instead gives effect to all parts of the arbitration clause.

Per the terms of the parties' agreement, the Court cannot issue provisional forms of relief until and unless arbitration proceedings have been commenced.  Because the parties must arbitrate this dispute, the Court concludes that it does not have jurisdiction to consider the merits of this case, including the remaining arguments in Defendant's Motion to Dismiss. Accordingly, the Court GRANTS Defendant's Motion to Compel Arbitration, DENIES the remainder of Defendant's Motion to Dismiss without prejudice, DENIES Plaintiff's pending motions for provisional relief without prejudice, and STAYS this case pending the commencement of arbitration.

---

[3] The Court notes that such a reading comports with the process contemplated by Nevada state law for seeking provisional remedies pending arbitration. *See* NRS 38.222 ("Before an arbitrator is appointed and is authorized and able to act, the court, upon motion of a party to an arbitral proceeding and for good cause shown, may enter an order for provisional remedies to protect the effectiveness of the arbitral proceeding . . . .").

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 9), is **GRANTED**, to the extent it moves to compel arbitration, and **DENIED without prejudice** with respect to the remaining arguments for dismissal.

**IT IS FURTHER ORDERED** that this case is **STAYED** pending arbitration.  The parties must file a Joint Status Report every 60 days informing the Court of the status of this dispute.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Writ of Attachment, (ECF No. 12), and Motion for Temporary Restraining Order, (ECF No. 13), are **DENIED without prejudice** and with leave to refile after Plaintiff initiates arbitration.

**DATED** this __5__ day of March, 2026.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT